UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO: 3:11-CV-157

**REBECCA LANCASTER,** *et al.*                                                                    **PLAINTIFFS**

v.

**DAYMAR COLLEGES GROUP, LLC,** *et al.*                                             **DEFENDANTS**

MEMORANDUM OPINION AND ORDER

A telephonic conference was held on February 10, 2012.

This matter is before the Court on the Plaintiffs' Motion to Remand pursuant to 28 U.S.C. § 1332(d)(4)(B) or, in the alternative, pursuant to 28 U.S.C. § 1332(d)(3). Docket Number ("DN") 10. The parties have filed multiple responses, replies, and supplemental replies in this matter. *See* DN 16, 19, 26, 29, 44, 45. Additionally, a telephonic conference of the parties was held on February 10, 2012. The motion to remand is now ripe for adjudication. Also pending before the Court is the Plaintiffs' Motion to Compel. DN 37. The Defendants have responded responded. DN 40. The Plaintiffs have replied. DN 43. For the following reasons the Plaintiffs' Motion to Compel is DENIED, and the Plaintiffs' Motion to Remand is DENIED.

## BACKGROUND

The facts at this nascent stage are straight forward. The Plaintiffs are current and former attendees of the various for-profit schools operated by the Defendants. They bring suit for injunctive, declaratory, and compensatory relief from harms they allege resulted from the Defendants' various illegal practices. The Plaintiffs base their causes of action on "KRS Chapter 165A *et seq.*, the Kentucky Consumer Protection Act, Kentucky antitrust laws, and common law misrepresentation, fraud, fraudulent inducement, breach of contract, breach of implied contract, conspiracy, and injunctive and declaratory relief." Mem. Op. & Order of June 14, 2011, DN 21, pp. 1-2. The named Plaintiffs seek to bring their claims on behalf of themselves and as representatives of a proposed plaintiff class. The proposed class includes "current and prior

attendees of the various Daymar Colleges (the "Class") in Kentucky, Indiana, and Ohio." Am. Compl., DN 22, ¶ 8.

> The Class is composed of present and former students of Daymar in Kentucky, Indiana and Ohio who have been fraudulently solicited to attend Daymar educational institutions with the promise of receiving Degrees transferable to the vast majority of institutions of higher learning, and for whom these representations were both false and the Degrees and credits non-transferable.
>
> Further, Plaintiffs seek to represent a class of those individuals who secured loans to pay for Degrees fraudulently solicited by Daymar, and these Degrees, although promised by Daymar, were not transferable to the vast majority of other institutions of higher learning and had little or no value for the purposes to which Daymar induced or promised to the Plaintiffs.
>
> Further, Plaintiffs seek to represent a class of those individuals who were promised jobs in their field of study following graduation from Daymar institutions in Kentucky, Indiana and Ohio, but who received no such jobs and received no assistance from Daymar in finding employment in their field of study.
>
> Plaintiffs also seek to represent a class of those individuals who attended Daymar in Kentucky, Indiana and Ohio who were misled and deceived about the terms and availability of financial aid.

*Id.* at ¶¶ 8-11.

Although the facts are straight forward, the procedural posture of this case has been anything but. The crux of the procedural disputes is whether this Court has jurisdiction. More specifically, the Plaintiffs claim that the Court is divested of jurisdiction under the "home state" exception to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because more than two-thirds of the members of the proposed class are citizens of Kentucky.

The Plaintiffs filed their original complaint against the Defendants in the Jefferson County Circuit Court on February 18, 2011. DN 1-1; DN 1-2. On March 14, 2011, the Defendants removed to this Court on the basis of diversity jurisdiction under the provisions of CAFA, 28 U.S.C. § 1332(d). DN 1. The Plaintiffs then moved to remand, arguing that the Defendants had failed to show that CAFA's amount in controversy requirement was satisfied,

and, in the alternative, that the "home state" or "discretionary" exceptions to CAFA jurisdiction applied. Mot. to Remand, DN 10. After considering the parties' briefs, the Court determined that the Defendants met CAFA's threshold for jurisdiction, including the $5 million amount in controversy requirement. Mem. Op. & Order of June 14, 2011, DN 21, p. 5. The Court could not determine, however, whether the "home state" or "discretionary" exceptions applied because the Plaintiffs' class allegations were ambiguous. *Id.* at pp. 5-8. The Court ordered the Plaintiffs to amend their complaint so as to "properly define the class they seek to represent." *Id*. at p. 8. The Plaintiffs filed their amended complaint on June 21, 2011. Am. Compl., DN 22.

Subsequent to receiving the amended complaint, the Defendants filed a supplemental reply in opposition to remand. Defs.' Supplemental Reply, DN 26. The Defendants included evidence allegedly showing that the Plaintiffs' class was less than two-thirds Kentucky residents, much less citizens. Second Aff. of Michael Leathers, DN 26-2. Additionally, the Defendants argued that the "discretionary" exception was inapplicable. Defs.' Supplemental Reply, DN 26, pp. 12-15. The Plaintiffs opposed these arguments in their own supplemental reply. Pls.' Supplemental Reply, DN 29. They took issue with the Defendants' statistics and asked the Court for leave to conduct limited discovery in order to determine the citizenship of the proposed class. *Id.* at 7. On August 19, 2011, the Court granted the Plaintiffs' motion for jurisdictional discovery. Mem. Op. & Order of August 19, 2011, DN 35. Through a series of joint motions from the parties, the Court extended the discovery deadline to January 4, 2012. Order of November 22, 2011, DN 39.

At the close of jurisdictional discovery, the Plaintiffs filed a second supplemental reply and claim to have produced evidence showing that more than two-thirds of the members of the proposed class are citizens of Kentucky. Pls.' Second Supplemental Reply, DN 44. The

Defendants also submitted a second supplemental reply, attacked the Plaintiffs' evidence, and asked this Court to deny the motion to remand.  Defs.' Second Supplemental Reply, DN 45.

Based on the briefs and evidence produced by the parties, the Court has been sufficiently advised on the pertinent issues and will now rule on the Plaintiffs' motion to remand.

**STANDARD**

The Class Action Fairness Act ("CAFA") provides that "[t]he district court shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant . . . ." 28 U.S.C. § 1332(d)(2).  Additionally, the proposed class must contain 100 or more individuals.  28 U.S.C. § 1332(d)(5)(B).  The party asserting jurisdiction pursuant to CAFA - a defendant removing from state court in most circumstances - bears the burden of proving, by a preponderance of the evidence, that the statute's jurisdictional requirements have been met. *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404-05 (6th Cir. 2007) (citations omitted).  If these requirements are met, the district court has jurisdiction to hear the case.

A district court's jurisdiction under CAFA is not without exception, however.  CAFA prescribes three statutory circumstances in which a court can or must decline jurisdiction.  Under the "home state" exception, a court is divested of jurisdiction if more than two-thirds of the members of the proposed class and the primary defendants are citizens of the state where the action was originally filed.  28 U.S.C. § 1332(d)(4)(B).  Under the "local-controversy" exception, a court's jurisdiction is removed if two-thirds of the members of the proposed class are citizens of the state in which the action was originally filed; the plaintiffs seek significant relief from at least one defendant who is from the state where the action was originally filed and

whose conduct forms a significant basis for the plaintiffs' claims; and the injuries resulting from the alleged conduct were incurred in the state in which the action was originally filed. 28 U.S.C. § 1332(d)(4)(A). Finally, a court is permitted, but is not required, to decline jurisdiction under the "discretionary" exception. 28 U.S.C. § 1332(d)(3). If more than one-third but less than two-thirds of the proposed plaintiffs' class and the primary defendants are citizens of the state in which the action was originally filed, the court may decline jurisdiction after examining the "totality of the circumstances" and several factors explicitly listed in the statute. *Id.* If a court is barred from exercising jurisdiction or declines to do so under any of the three CAFA exceptions, it must dismiss the action - if an original federal action - or remand to the state court from which it was removed.

      A party seeking remand must show that one of the CAFA exceptions applies by a preponderance of the evidence. *See In Re Sprint Nextel Corp.*, 593 F.3d 669, 673 (7th Cir. 2010) (home state exception must be proven by preponderance of the evidence); *Preston v. Tenet Healthsystem Mem'l Med. Ctr. Inc.*, 485 F.3d 793, 797 (5th Cir. 2007) (local controversy exception must be proven by a preponderance of the evidence); *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007) ("[O]nce federal jurisdiction has been established under [§ 1332(d)(2)], the objecting party bears the burden of proof as to the applicability of any express statutory exception under §§ 1332(d)(4)(A) and (B)."); *Evans v. Walter Indus.*, 449 F.3d 1156, 1164 (11th Cir. 2006) ("[W]hen a party seeks to avail itself of an express statutory exception to federal jurisdiction granted under CAFA, as in this case, we hold that the party seeking remand bears the burden of proof with regard to that exception."). In sum, the party asserting jurisdiction under CAFA bears the burden of proof. Once jurisdiction is established, however, the burden shifts to the party opposing jurisdiction to prove that one of the CAFA exceptions

applies.

## DISCUSSION

The Court previously held that the Defendants met the requirements of 28 U.S.C. § 1332(d)(2) and had properly removed to this Court under CAFA.  Mem. Op. & Order of June 14, 2011, DN 21, pp. 3-5.  The Plaintiffs now seek to remand this case to state court and assert two grounds for doing so.  First, they claim that the Court is divested of jurisdiction by CAFA's "home state" exception found in 28 U.S.C. § 1332(d)(4)(B) because more than two-thirds of the members of the proposed class are citizens of Kentucky.  In the alterative, the Plaintiffs would have the Court decline jurisdiction under the "discretionary" exception.  The Court addresses each of these arguments in turn.

**A. The "Home State" Exception.**

A federal district court is divested of jurisdiction under CAFA where two-thirds or more of the members of the proposed plaintiffs' class and the primary defendants are citizens of the state in which the action was originally filed.  28 U.S.C. § 1332(d)(4)(B).  The parties agree that the primary defendants are citizens of Kentucky.  The real issue in this case is whether two-thirds of the members of the proposed class are citizens of Kentucky.  The Plaintiffs bear the burden of proving class citizenship by a preponderance of the evidence.  *See In Re Sprint Nextel Corp.*, 593 F.3d at 673.  The Plaintiffs contend that they have discovered evidence conclusively showing that more than two-thirds of the members of the proposed class are citizens of Kentucky.

*1. Standard for Citizenship.*

Before examining the Plaintiffs' evidence, the Court finds it necessary to discuss and review how courts determine citizenship for the purposes of the diversity statute, including CAFA.  The citizenship of a natural person is equated with his or her domicile.  *Certain*

6

*Interested Underwriters at Lloyd's v. Layne*, 26 F.3d 39, 41 (6th Cir. 1994); *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990) ("State citizenship for the purpose of the diversity requirement is equated with domicile."); *see* 15 Moore's Federal Practice § 102.34 (Matthew Bender 3d Ed. 2011) (in the context of diversity, "'citizenship' of a state and 'domicile' are synonymous terms"). "To acquire domicile within a particular state, a person must be physically present in the state and must have either the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere." *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir. 1973); *see Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) ("For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there."). Thus, a person's citizenship or domicile is composed of an objective and subjective component.

The objective component of citizenship is fulfilled by showing one's physical presence in a state. The subjective component of citizenship - the intent to remain in a particular state - is the more difficult inquiry. Although a person's place of residence is an indicia of his or her domicile, "'[d]omicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another." *Holyfield*, 490 U.S. at 48 (citations omitted). It has repeatedly been held that "[a] party's residence in a state alone does not establish domicile." *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 798 (5th Cir. 2007); *see, e.g., Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (noting that residency without intent to remain fails to establish domicile). Indeed, an individual's residence is but one of many factors courts examine when determining a person's domicile. *See Garcia Perez v. Santeaella*, 364 F.3d 348, 351 (1st Cir. 2004) (when determining domicile a court should consider factors like current residence, voting registration and voting practices, locations of personal and real property, place

of employment, driver's licenses, and payments of taxes); *Stifel,* 477 at 1122 ("[I]ndicia of intent [to remain] include affidavits of intention . . . opening bank accounts, addressing tax returns, motive for establishing domicile, and other physical facts evidencing [a] desire to remain . . . ."). An objective showing of a person's place of residence is insufficient to establish his or her domicile without evidence of subjective intent to remain in a particular state.

### 2. The Plaintiffs' Evidence of the "Home State" Exception.

At all times in this litigation the Plaintiffs have maintained that two-thirds of the members of the proposed class are citizens of Kentucky. In support of this position the Plaintiffs submitted evidence purporting to show that the Court is divested of jurisdiction under the "home state" exception. The Court now examines this evidence and concludes that it fails to demonstrate that two-thirds of the members of the proposed class are citizens of Kentucky. The evidence is insufficient because the Plaintiffs have wrongly assumed that they may prove the citizenship of the proposed class solely by establishing the residence of its members.

#### a. Evidence Submitted with the Original Motion to Remand.

The Plaintiffs' original motion to remand included a table of data purporting to show that 65.95% of students attending the Defendants' schools in Kentucky, Indiana, and Ohio during the 2009 school year were citizens of Kentucky. Pls.' Mot. to Remand, DN 10-1, p. 14. Through exhibits attached to their motion, the Plaintiffs submitted the data used to create the table. *See* DN 10-16; DN 10-17. The Court has examined this data and finds that the conclusions drawn from it are flawed for three reasons. First, and most troubling of all, the Plaintiffs claim that certain percentages in the table show the percentage of in-state *citizens* attending each campus in 2009. By way of example, the table shows that 77% of the students attending the Daymar campus in Louisville were citizens of Kentucky. The Plaintiffs draw this conclusion from

8

reports of the National Center for Education Statistics (NCES). The NCES report for Daymar's Louisville campus lists the total number of students attending in the fall of 2009 and also provides a graph of "undergraduate student *residence*." DN 10-17, p. 62 (emphasis added). This graph shows that 77% of Daymar's Louisville students were *residents* of Kentucky. As discussed above, *residence*, alone, does not equate to *citizenship*. *See Holyfield*, 490 U.S. at 48. Although the NCES reports may show what percentage of Daymar's Louisville students are objectively present in Kentucky, it does nothing to demonstrate their subjective intent to stay in the state. Therefore, the Plaintiffs' reliance on the NCES data is misplaced. The NCES data is not evidence that members of the proposed class are *citizens* of Kentucky.

Second, although the Plaintiffs present the percentages on the NCES forms as data from 2009, an examination of the forms shows that the in-state residency percentages are actually reported for 2008. Every NCES form states, just below the graph showing the percentage of "undergraduate student residence," that "Residence data are reported for first-time degree/certificate-seeking undergraduates, *Fall 2008*." DN 10-17, pp. 4, 11, 18, 25, 32, 39, 46, 54, 62, 70, 76 (emphasis added). The Plaintiffs attempt to determine the number of Kentucky citizens attending Daymar's campuses by multiplying the total number of Daymar students on each campus in *2009* by the percentage of "undergraduate student residence" for *2008*. This type of cross-year multiplication voids any measure of validity in the data. The Court can draw no reliable conclusions about the citizenship of the class when total numbers from 2009 are multiplied by percentages from 2008.

Finally, the table in the Plaintiffs' motion to remand uses two different sources to establish the total number of students attending Daymar campuses in 2009. The total numbers of students attending Daymar's schools in Ohio, as well as the campus in Madisonville, Kentucky,

9

are drawn from the NCES reports. DN 10-17, pp. 3, 10, 17, 24, 31. Although enrollment numbers for the other campuses are also available from the NCES reports, the Plaintiffs choose to supplement the numbers for Daymar's Kentucky campuses with enrollment statistics from the Kentucky State Board for Proprietary Education (KYSBPE). DN 10-16. The Plaintiffs provide no explanation why the KYSBPE numbers should be substituted for the numbers provided by the NCES. An explanation is readily apparent, however. For unexplained reasons, the total number of Daymar students in the KYSBPE report is greater than the total number in the NCES reports. Multiplying the larger KYSBPE numbers by the NCES residency percentages naturally results in a greater number of Daymar attendees who are supposedly Kentucky citizens. The Plaintiffs provide no explanation why the Court should accept the greater total numbers provided by the KYSBPE while retaining the NCES numbers for Daymar's Ohio and Madisonville campuses.

Overall, the Court finds that the data originally submitted with the Plaintiffs' motion to remand is inconclusive and unreliable for determining the citizenship of the proposed class. The data confuses residence with citizenship, compares statistics from two different years, and includes data from two different sources without providing any justification for doing so. The Court's jurisdiction is not removed by this data because it does not show that two-thirds or more of the members of the proposed class are citizens of Kentucky.

     **b. Evidence Submitted with the Plaintiffs' Second Supplemental Reply.**

As detailed in the procedural history, the Court allowed the Plaintiffs to amend their complaint and conduct jurisdictional discovery. Subsequent to completing discovery the Plaintiffs submitted a second supplemental reply in which they claim to have proven that more than 70% of the members of the proposed class are citizens of Kentucky.

Attached to their second supplemental reply, the Plaintiffs included data derived from

Integrated Post-Secondary Education Data Systems ("IPEDS")[1] reports, which contain multiple years of enrollment information across eleven Daymar campuses in Kentucky, Ohio, and Daymar's online program.[2]  DN 44-6.  According to the Plaintiffs, the IPEDS reports contain citizenship statistics about all first-time Daymar enrollees.  Although the proposed Plaintiffs' class includes *all* current and former Daymar students in Kentucky, Ohio, and Indiana, and not just first-time enrollees, the Plaintiffs claim that "there is no evidence to suggest the citizenship statistics [of non-first-time enrollees] would vary significantly from students included in the IPEDS reports."  Pls.' Second Supplemental Reply, DN 44, p. 7 n.19.  After examination, the Court finds that the report attached to the Plaintiffs' second supplemental reply suffers from the same primary deficiency as the data attached to the motion to remand.  The new report wrongly supposes that a person's state of residence is analogous to his or her state of citizenship.

       The Defendants filed a second supplemental reply in which they attack the Plaintiffs' reliance on the statistics derived from the IPEDS reports.  In particular, the Defendants included two noteworthy exhibits with their reply.  The first is a sample IPEDS report containing no data.  DN 45-3.  The second is a completed IPEDS report for the Owensboro campus containing enrollment data for the fall of 2008.  DN 45-5.  Both of these documents contain a section in which the campus is required to report the "*Residence* of first-time undergraduate students."  DN 45-3, pp. 14-17 (emphasis added); DN 45-5, pp. 7-10 (emphasis added).  The Plaintiffs claim that the IPEDS reports demonstrate the *citizenship* of first-time enrollees, but this is simply not

---

[1] The IPEDS reports contain data the Defendants submitted to the U.S. Department of Education.  The reports were produced through discovery in the related case of *Wiggins v. Daymar College Group, LLC*, 5:11-CV-00036-TBR.  The *Wiggins* case is factual and procedurally analogous to this case and has been filed against the same defendants.  In *Wiggins*, this Court also granted limited discovery on the issue of whether two-thirds or more of the members of the proposed class are citizens of Kentucky.
[2] The aggregated data submitted by the Plaintiffs cover Daymar's campuses in Madisonville, Owensboro, Paducah, Bellevue, and Scottsville, Kentucky.  The data also cover Daymar's online program and the physical campuses at Lancaster, Jackson, Chillicothe, and New Boston Ohio.  The data available are varied, but generally cover different enrollment periods from 2005 to 2010.

the case.  As with the previous evidence submitted in this case, the Plaintiffs have wrongfully equated residence with citizenship.  Because the IPEDS reports only show that 70% of first-time enrollees are *residents* of Kentucky, the Plaintiffs have failed to prove that two-thirds or more of the members of proposed class are *citizens* of Kentucky.  The "home state" exception is inapplicable because the Plaintiffs have failed to show that two-thirds or more of the members of the proposed class are citizens of Kentucky.

      **c.   Other CAFA cases have refused to equate residency with citizenship.**

The Court has determined that evidence regarding the citizenship of the proposed Plaintiffs' class is insufficient to trigger the "home state" exception.  Although the Plaintiffs have put forth evidence regarding the residence of the class members, residence alone is insufficient to establish citizenship.  This position is supported by numerous cases addressing the CAFA exceptions.

In *Sprint Nextel Corp.*, the plaintiffs sought to bring a class action in state court on "behalf of themselves and 'all Kansas residents' who purchased text messaging from Sprint Nextel . . . between January 2005 and October 2008[.]" *In re Sprint Nextel Corp.*, 593 F.3d at 671.  The plaintiffs limited their class to "those who (1) had a Kansas cell phone number, (2) received their cell phone bill at a Kansas mailing address, and (3) paid a Kansas 'USF fee,' which is applied to all long-distance calls within Kansas." *Id.*  The defendant removed the case to federal court under the provisions of CAFA, and the plaintiffs sought to remand under the "home state" exception. *Id.*  The district court granted removal because "the class definition itself, keyed as it is to Kansas cell phone numbers and mailing addresses, made it more likely than not that two-thirds of the putative class members are Kansas citizens." *Id.* at 673.  Although the Seventh Circuit Court of Appeals was "inclined to think that at least two-thirds of those who

have Kansas cell phone numbers and use Kansas mailing addresses for their cell phone bills are probably Kansas citizens," the court reversed the decision to remand. *Id.* at 674. The court's assumption about the citizenship of the class was "[s]ensible guesswork based on a sense of how the world works, but guesswork nonetheless." *Id.* The court refused to remand and agreed "with the majority of district courts that a court may not draw conclusions about the citizenship of class members based on things like their phone numbers and mailing addresses." *Id.*

In *Preston v. Tenet Healthsystem*, the plaintiffs sought to bring a class action on behalf of patients who were injured or killed as a result of unreasonably dangerous conditions on the premises of the defendants' hospital in the wake of Hurricane Katrina. *Preston*, 485 F.3d at 795-96. The defendants removed from state court pursuant to CAFA, but the district court remanded, finding that "the best evidence that is available at this time indicates that more than two-thirds of the proposed class are citizens of Louisiana." *Id.* at 796. The plaintiffs used the pre-Katrina addresses of the hospitalized patients and their medical records as evidence of their citizenship. *Id.* at 798. The defendants even "confirmed that 200 of the 242 patients listed in [one plaintiff's] affidavit provided an Orleans Parish address as their primary residence." *Id.* In spite of this fact, the Fifth Circuit Court of Appeals reversed because "[the plaintiffs] presented no evidence . . . to demonstrate that these patients not only *resided* in Orleans Parish at the given addresses but also were *domiciled* in Louisiana at the time of Hurricane Katrina. A party's residence in a state alone does not establish domicile." *Id.* (emphasis original) (citation omitted). Domicile requires evidence of intention to remain in a place, and without "evidence of intent . . . the district court could not make the requisite credible estimate to remand . . . ." *Id.* at 801. "Without anything more than the patients [sic] primary billing addresses, the district court lacked grounds for making a credible estimate that at least two-thirds of the patients and other proposed class

13

members were citizens of Louisiana during the relevant time period." *Id.*

In *McMorris v. TJX Cos.*, the McMorris class sought to represent "[r]esidents of Massachusetts who made purchases and paid by credit or debit card or check or who made a return at one of more [of the defendant's stores] in the United States from 2002 to the end of 2006." *McMorris v. TJX Cos.*, 493 F. Supp. 2d 158, 161 (D. Mass 2007). The court refused to remand under the "home state" exception because the class definition was overly broad. Use of terms "residents" instead of "citizens" in the class made is so that the class might "include foreign citizens who resided in Massachusetts during that period and who made purchases at TJX." *Id.* at 162. Furthermore, the court rejected the plaintiffs' argument that "residence and citizenship are to be used interchangeably for the purposes of ascertaining diversity jurisdiction under CAFA." *Id.* Finally, it was insufficient for the plaintiffs to assert that all the named plaintiffs were citizens of Massachusetts and extrapolate that at least two-thirds of the class were also. *Id.* at 165-66.

In *Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506, 508-09 (E.D. Pa. 2007), the plaintiffs' class was defined as "[a]ll current and former employees of the U.S. Gauge facility who have been exposed to one or more of the Defendants' beryllium-containing products for a period of at least one (1) month while employed at the U.S. Gauge facility." The class was alleged to "consist of at least several thousand members," and the plaintiffs sought remand under the "home state" exception. *Id.* at 509. The court declined to remand because the composition of the class was speculative and "the citizenship of the entire class was never defined." *Id.* at 517. Most importantly, the class was composed of employees who worked at the facility during a 35-year period, and the plaintiffs provided no evidence that the thousands of members of the proposed class "were ever, or have remained domiciled in Pennsylvania. Though this may be a

14

reasonable inference, it does not satisfy the plaintiff's burden of proof." *Id.*

Finally, in *Nicholas v. Progressive Direct Ins. Co.*, Civil Action No. 06-146-DLB, 2007 U.S. Dist. LEXIS 29689, at *9-10 (E.D. Ky. March 31, 2007), the court denied a motion to remand under the "home state" exception. The court refused to remand because the class was proposed to cover five years and "to conclude that over this period at least two-thirds of these persons remained citizens of the state would be sheer speculation at this stage." *Id.* at *10.

All of these cases are instructive in the present case. In *Sprint Nextel* and *Preston*, the plaintiffs sought to establish the citizenship of the class by presenting the court with the mailing and billing addresses of its members. Both courts found that addresses alone, as evidence of residence, were insufficient to establish domicile. In the present case, the Plaintiffs claim to show citizenship by relying on evidence of residence as detailed above. This evidence is not sufficient and fails to establish domicile. In *McMorris*, remand was not warranted when the plaintiffs asserted a class on behalf of Massachusetts residents and claimed that all of the named plaintiffs were Massachusetts citizens. In the present case, even the named Plaintiffs fail to allege that they are *citizens* of Kentucky. The original complaint, which identifies the 39 named plaintiffs and was incorporated by reference into the amended complaint, only states that 32 of the named plaintiffs are *residents*, not citizens, of Kentucky. Compl., DN 1-2, ¶¶ 1-9, 11-21, 24, 26, 28-31, 33, 34, 36-39. The other named plaintiffs are alleged to be *residents* of Indiana. *Id.* at ¶¶ 10, 22-23, 25, 27, 32, 35. There is no reference to their *citizenship*. Furthermore, the proposed class is silent as to citizenship. It is asserted only on behalf of "current and prior attendees of the various Daymar Colleges in Kentucky, Indiana, and Ohio." Am. Compl., DN 22, ¶ 8. Finally, the scope and duration of the proposed classes in *Anthony* and *Nicholas* rendered the "home state" exception inapplicable. In *Anthony*, the class was comprised of

15

employees who worked at a facility over a 35-year period, and in *Nicholas* it was composed of individuals who bought insurance during a 5-year span.  In the present case, the evidence presented by the Plaintiffs spans approximately 5 years, and through their pending motion to compel, they seeks to obtain information about class citizenship reaching back a total of 15 years.  Pfs.' Mot. to Compel, DN 37.  In the words of *Nicholas*, "[t]o conclude that over this period at least two-thirds of these persons remained citizens of the state would be sheer speculation . . . ."  *Nicholas*, 2007 U.S. Dist. LEXIS 28689, at *10.  Overall, the Court holds that the Plaintiffs have failed to prove that two-thirds of the members of the proposed class are citizens of Kentucky.  The "home state" exception will not divest the Court of jurisdiction.

    B.  **The "Discretionary" Exception.**

In addition to the "home state" exception, the Plaintiffs ask this Court to decline jurisdiction under CAFA's "discretionary" exception.  The "discretionary" exception allows a court, after considering a number of statutory factors, to decline jurisdiction if "greater than one-third but less than two-thirds of the members of all proposed plaintiffs classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed . . . ."  28 U.S.C. § 1332(d)(3).  The Court need not spend much time analyzing whether it should decline jurisdiction under the "discretionary exception."  This exception does not apply.

For the present case, the "discretionary" exception requires the Plaintiffs to show that more than one-third of the members of the proposed class are citizens of Kentucky.  As demonstrated above, the Plaintiffs have only submitted evidence regarding the *residence* of the members of the proposed class, not their citizenship.  As such, the Court cannot determine whether more than one-third of the members of the proposed class are citizens of Kentucky, a factor that must be present to trigger the discretionary analysis.  The Court holds that it will not

decline jurisdiction under the "discretionary" exception because the Plaintiffs have failed to present evidence that more than one-third of the members of the proposed class are citizen of Kentucky.

    C.  **The Plaintiffs' Motion to Compel.**

In addition to their motion to remand, the Plaintiffs have filed a motion to compel the production of documents and supplemental depositions. DN 37. Their motion asks the Court to compel production on two items. First, the Plaintiffs request that the Defendants produce any evidence that would aid in determining the citizenship of all students attending Daymar's campuses in Kentucky, Indiana, and Ohio during the past fifteen years. Second, the Plaintiffs seek access to citizenship information about students attending Daymar campuses in Bowling Green, Russellville, and Clinton, Kentucky. The Court addresses these requests separately.

    1.  *Request for Fifteen Years of Evidence.*

The Plaintiffs claim that they have repeatedly requested and been denied access to information concerning the citizenship of Daymar's students. Specifically, the Plaintiffs seek information about the citizenship of all students attending any Daymar college in the past fifteen years. The Defendants have generally provided this information for students attending in the past five years, but refuse to reach back beyond this point because any claim older than five years is barred by the statute of limitations. The Defendants argue that five years is the applicable statute of limitations on all of the Plaintiffs' claims because they failed to plead a breach of written contract. On the other hand, the Plaintiffs argue that they are entitled to fifteen years' of citizenship information because they properly pled a claim based on breach of a written contract. The Court finds it unnecessary to determine which statute of limitations is applicable at this juncture and takes no position on the issue. The Plaintiffs' request for discovery will be

denied, however, because information about the citizenship of the proposed class that is more than five years old is unreliable and speculative.

It is a fact of life that people move and change their place of domicile from time to time. This fact is especially true for college students who may transfer schools or establish a domicile in another state because of a job opportunity after graduation. To think that any information Daymar possesses regarding the citizenship of its student from fifteen years ago is accurate and informative in the present case is a bridge too far. And even if Daymar had definitive information about the citizenship, not just residence, of its students from fifteen years ago, that information would say nothing about the students' domiciles at the time the suit was filed. It is a well-known principle that a party's domicile is determined as of the date the case is filed, not based on information from fifteen years before. *See* 15 Moore's Federal Practice § 102.32 (Matthew Bender 3d. Ed. 2011).

The Court is not alone in coming to this conclusion in a case involving CAFA's jurisdictional requirements. As pointed out above, the *Nicholas* Court found that it would be mere speculation to conclude that two-thirds of the members of the proposed class remained citizens of Kentucky as of the date the suit was filed when the class was proposed to cover a five-year period. *Nicholas*, 2007 U.S. Dist. LEXIS 28689, at *9-10. Additionally, the *Anthony* Court was skeptical that the case could be remanded under the "home state" exception where the plaintiffs sought to represent a class of individuals who had worked at the defendants' plant over a period of thirty-five years. *Anthony*, 535 F. Supp. 2d at 517. In the present case, any information regarding the citizenship of the proposed class that could be derived from information more than five years old is simply speculative and unreliable. The Plaintiffs' request in this regard will be denied.

### 2. *Request for Evidence from the Bowling Green, Russellville, and Clinton, Kentucky Campuses.*

The Plaintiffs also request that the Defendants produce all evidence regarding the citizenship of the students attending the Daymar campuses in Bowling Green, Russellville, and Clinton, Kentucky. In their response to the motion to compel, the Defendants claim that they cannot produce this evidence because they do not own these three facilities. According to the Defendants, Draughons Junior College ("DJC"), a Tennessee corporation, owns and operates these campuses in Kentucky and because DJC is not a party to this case, the Defendants cannot produced information they do not own.

At the present time the Court is uncertain of the relationship between the Defendants, DJC, and the campuses in Bowling Green, Russellville, and Clinton, Kentucky. No evidence has been produced to show that DJC actually owns these campuses. If it is shown that DJC owns these campuses, then it is clear that the Defendants cannot produce evidence regarding the citizenship of these students because DJC is not a party-defendant. To the extent that the Defendants do own these campuses, the Court will deny the Plaintiffs' motion to compel the production of citizenship information for the purposes of jurisdictional analysis. The evidence previously produced by the Plaintiffs only demonstrates the residence of the proposed class, and the Court finds that further discovery on this issue would not produce evidence regarding the citizenship of the class. If, however, it is shown that the Defendants own the campuses at Bowling Green, Russellville, and Clinton, then students attending those campuses would be part of the proposed class and their identities should remain discoverable for any class certification issues that the Court may be required to address in the future.

## CONCLUSION

For the foregoing reasons the Plaintiffs' Motion to Compel (DN 37) is **DENIED** and the


Plaintiffs' Motion to Remand (DN 10) is **DENIED**.

IT IS HEREBY ORDERED that a **telephonic conference of the parties** is set for **February 16, 2012, at 2:30pm EST**. The Court shall initiate the call.

*Thomas B. Russell*

Thomas B. Russell, Senior Judge
United States District Court

February 14, 2012

P/10